UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | No. 6:15-CR-21-GFVT-HAI-3 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| JORDAN DWAYNE TAYLOR, | ) ) | |
| Defendant. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 319), the Court considers reported violations of supervised release conditions by Defendant Jordan Dwayne Taylor.

Then-District Judge Thapar entered Judgment against Defendant in September 2016 after Defendant pleaded guilty to one count of conspiracy to distribute heroin. D.E. 199. Defendant was sentenced to 100 months of imprisonment followed by five years of supervised release. *Id*. Defendant was released on March 10, 2023. On March 23, he was referred to Windows of Discovery in Somerset for substance abuse and mental health counseling.

On June 15, 2023, the United States Probation Office ("USPO") reported that Defendant had used a controlled substance, but requested no action at the time. D.E. 315. According to that report:

> On June 12, 2023, the defendant reported to the Probation Office in London, Kentucky, and admitted to the use of methamphetamine and oxycodone. A urine specimen was collected, which confirmed the admission, via instant testing device. Taylor admitted to using methamphetamine and oxycodone on five occasions from May 31, 2023, until June 9, 2023. The defendant reported a relapse after attempting to stop using his prescribed Suboxone. Taylor currently has stable employment and a support system in place. The defendant indicated

> having an appointment for June 13, 2023, to restart Suboxone treatment, which includes substance abuse counseling.

*Id.* His outpatient counseling and drug testing were increased to occur weekly for at least a three-month period.

## I.

On September 20, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations.

First, according to the Report,

> On September 19, 2023, the defendant admitted to the use of methamphetamine and heroin, but stated he suspected the heroin may have been fentanyl. The defendant submitted a urine specimen which confirmed the use methamphetamine and fentanyl, via instant testing device. The defendant signed an admission form indicating the use of methamphetamine and fentanyl during the previous two weeks.

Violation #1 charges a Grade-C violation of the condition prohibiting use of any controlled substance except as prescribed by a physician.

Based on Defendant's use of methamphetamine, Violation #2 charges a violation of the condition that prohibits commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of meth, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Based on Defendant's use of fentanyl, Violation #3 charges another violation of the condition that prohibits commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's use and possession of meth, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On October 3, 2023, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 324. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 17, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 325. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1, #2, and #3 as described in the Report. The United States thus established all three under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, including the Report (and accompanying documents) and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute heroin, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original

sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for Violation #1 and a Grade B violation with respect to Violations #2 and #3. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 18 to 24 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the government argued for a mid-Range revocation penalty of 21 months' incarceration, followed by four years of supervised release. The defense requested a below-Range incarceration penalty, to be followed by six to twelve months of inpatient treatment. The defense acknowledged that the USPO's contracts only provide for 90 days of inpatient treatment. However, Defendant's family was willing to pitch in on the cost of a longer program.

Concerning the underlying conviction, the government characterized Defendant as the "biggest heroin dealer in Pulaski County." According to the PSR, Defendant would buy heroin from codefendant Hatton and then distribute it in Somerset. PSR ¶¶ 7-9. Taylor's home had a

---

[1] "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." USSG § 7B1.2(b).

4

circular driveway and "he had a large volume of vehicles coming to his house to purchase heroin." *Id.* ¶ 8.

Concerning his criminal history, the government said that since age 18, Defendant had been involved in constant crime whenever he was not in custody. He has already served over a year of jail time on parole revocations. His convictions are all drug-related.

The government thus argued that Defendant is a danger to the public in need of deterrence. Defendant is "lawless" and is only deterred when "locked up."

Concerning the breach of the Court's trust, the government observed that Defendant's underlying sentence was twenty months less than the low end of his Guidelines Range. Also, he violated quickly, using meth and oxycodone in June only three months after his release. Then, four months later, he used drugs again, leading to these proceedings.

Concerning drug-abuse treatment, the government said he had "treatment stints" in 2009 and 2012. He completed the 400-hour RDAP in prison, but he was then dismissed from TDAP due to a meth positive. This year, upon release, he was referred to treatment.

At one point, the parties and probation officer discussed what occurred on September 19. After Defendant's drug test and admission that day to using meth and fentanyl-posing-as-heroin, he went to Windows of Discovery both for a scheduled counseling appointment and to enroll Defendant in inpatient treatment. The probation officer was there with him for a time, but had to leave. Defendant left before the counseling session was finished and before he could be fully enrolled. After that incident, the officer wrote the Report. According to Defendant, there had been a miscommunication. He thought the counseling session was finished and he would be going to jail regardless of what happened.

5

The government read an email from Windows staff that memorialized what happened from their point of view. According to the email, Defendant's counseling session had been extended while they booked him into rehab. Defendant started gathering his things to leave. He told them he was not going into rehab. He would rather spend his days with his family than "a bunch of druggies." He said he knew the Marshals would be coming to get him. He told them repeatedly he was "done," and would soon be going to jail. The email says staff kept stressing the importance of going to rehab; they were concerned for his safety. But he left anyway.

The government asked that Defendant again be referred for inpatient treatment upon release.

Counsel for the government said he could seek a top-of-the-Guidelines sentence under the circumstances. But he gave Defendant credit for accepting responsibility and for the lack of violence in his violation conduct. As for the recommended four-year supervision term, the government simply asked for something less than the original five-year term, given the time Defendant has already been on supervision.

Defense counsel argued that Defendant was not actually running from drug treatment. He seeks treatment, but misunderstood the situation on September 19. Defendant has been working since April at a factory in Somerset. Defendant told counsel he was thankful for being arrested because he was afraid he would otherwise die due the drugs he was taking. Defendant has used drugs since he was fifteen or sixteen years old.

According to the defense, Defendant is moving into a different stage of his life. Defendant has twin sons, twelve years old. Their mother killed herself in 2019 while Defendant was in prison. The maternal grandmother, Ms. Hood, who was present in the courtroom, has

custody. Ms. Hood wants Defendant to deepen his relationship to these boys, and she is willing to contribute to his treatment.

Defendant briefly addressed the Court. He apologized to the Court, the probation officer, and his family. He took full responsibility for his actions. He said he has a purpose and asked for "leniency" and for help with his addiction.

Ms. Hood, through defense counsel, told the Court that since his release, the boys have developed a significant bond with Defendant. The loss of their mother was traumatic, but they are thankful to have one parent. Ms. Hood expressed concern that, due to the age of her and her husband, they might not be able to keep the boys much longer and she did not want them going into foster care.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of Grade B violations also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall

revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was part of a major pipeline of heroin from Cincinnati to Pulaski County. His Guidelines called for 120 to 150 months, but he received 100 months. At the time of his arrest in 2015, he was a daily intravenous user of heroin and meth. Now, he has again used meth and fentanyl that he thought was heroin. He thereby posed a danger to himself and also his family and the public.

The Court next considers Defendant's history and characteristics. As stressed by the government, he has a long history of drug-related crimes broken only by periods of custody. The defense stressed that he now has a steady factory job, family support, and a motivation to be there for his children. Defendant also appeared somewhat fatalistic last month when he admitted his drug use and then left his Windows appointment, insisting he would not be going to rehab.

Another factor considers the need for additional training and treatment. Defendant has received treatment. But both sides requested additional treatment and Defendant insisted he is motivated to change.

Two other factors, the need to protect the public and the need to deter criminal conduct, weigh heavily in this case. Defendant's use of an illegal drug necessarily involves contact with drug trafficking. And Defendant trafficked drugs before to support his habit.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines

8

7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach is serious here in that Defendant used drugs in June after his release in March. No revocation proceedings were commenced then. Defendant used again in September, and an attempt by Probation to get him immediately into rehab was unsuccessful.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. The Court is not able to point to a sufficient reason to vary below the Guidelines, particularly when Defendant's original sentence was twenty months below his range.

The Court recommends revocation with 18 months of imprisonment. This bottom-Range sentence is the minimum to address the relevant factors. The Court recommends the USPO conduct a drug-treatment assessment upon release. Additional supervision for four years is also appropriate. This will provide time for treatment and to monitor Defendant for deterrence and protection of the public. The Court has hope that it will not need to see him again.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations;

2. Revocation with eighteen months of imprisonment and four years of supervised release.

3. That the USPO conduct a drug-treatment assessment upon release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of October, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge