UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:15-CR-21-GFVT-HAI-3 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JORDAN DWAYNE TAYLOR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 351), the Court considers reported violations of supervised release conditions by Defendant Jordan Dwayne Taylor. This is his second revocation.

**I.**

Then-District Judge Thapar entered Judgment against Defendant in September 2016 after Defendant pleaded guilty to one count of conspiracy to distribute heroin. D.E. 199. Defendant was sentenced to 100 months of imprisonment followed by five years of supervised release. *Id*. Defendant was released on March 10, 2023. On March 23, he was referred to Windows of Discovery in Somerset for substance abuse and mental health counseling.

On June 15, 2023, the United States Probation Office ("USPO") reported that Defendant had used a controlled substance, but requested no Court action at the time. D.E. 315. According to that report:

> On June 12, 2023, the defendant reported to the Probation Office in London, Kentucky, and admitted to the use of methamphetamine and oxycodone. A urine specimen was collected, which confirmed the admission, via instant

> testing device. Taylor admitted to using methamphetamine and oxycodone on five occasions from May 31, 2023, until June 9, 2023. The defendant reported a relapse after attempting to stop using his prescribed Suboxone. Taylor currently has stable employment and a support system in place. The defendant indicated having an appointment for June 13, 2023, to restart Suboxone treatment, which includes substance abuse counseling.

*Id*. His outpatient counseling and drug testing were increased to occur weekly for at least a three-month period. *Id*.

Revocation proceedings commenced after a September 20, 2023 report from the USPO that charged as follows:

> On September 19, 2023, the defendant admitted to the use of methamphetamine and heroin, but stated he suspected the heroin may have been fentanyl. The defendant submitted a urine specimen which confirmed the use methamphetamine and fentanyl, via instant testing device. The defendant signed an admission form indicating the use of methamphetamine and fentanyl during the previous two weeks.

Defendant admitted all three charges—unlawful controlled-substance use, and unlawful possession of methamphetamine and of fentanyl. D.E. 325. In October 2023, he was sentenced to eighteen months' imprisonment, followed by four years of supervision, including a drug-treatment assessment upon release. D.E. 326 at 9; D.E. 328, 329.

Defendant was released again on January 3, 2025. On February 3, 2025, he was referred to Windows of Discovery in Somerset, Kentucky, for substance abuse and mental health counseling. On March 6, 2025, the USPO issued a report, but requested that no court action be taken. According to the probation officer:

> On March 4, 2025, the defendant reported to the Probation Office in London, Kentucky, and admitted to the use of methamphetamine. A urine specimen was collected, which confirmed the admission, via instant testing device. Taylor admitted to using methamphetamine on one occasion on March 1, 2025. Taylor indicated having strong desire to remain sober and requested the opportunity to attend weekly treatment.

D.E. 335. This 12A report indicated that Defendant's treatment at Windows of Discovery would continue, and he would receive weekly drug testing for six months. *Id*.

## II.

On September 15, 2025, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations.

Violation #1 alleges a violation of the condition that prohibits committing another federal, state, or local crime. According to the Report, On August 29, 2025, Defendant's former significant other filed for an emergency protective order in Pulaski District Court (# 25-D-00292-001). This order alleged physical assault and strangulation. The probation officer supplied pictures of the victim's injuries. The incident was described as "a violation of Kentucky Revised Statu[t]e 508.175, Strangulation in the Second Degree, a Class D felony, and Kentucky Revised Statu[t]e 508.030, Assault in the Fourth Degree, a Class A misdemeanor."[1]

---

[1] The Report charges Violation #1 as Grade B. However, a felony crime of violence constitutes a Grade A violation under USSG § 7B1.1. As defined in USSG § 4B1.2(a),

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2)  is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Kentucky law defines second-degree strangulation as follows:

> A person is guilty of strangulation in the second degree when the person, without consent, wantonly impedes the normal breathing or circulation of the blood of another person by:
>
> (a)  Applying pressure on the throat or neck of the other person; or
>
> (b)  Blocking the nose or mouth of the other person.

KRS § 508.175(1); *see also Bandy v. Comm.*, 701 S.W.3d 553, 563 (Ky. Ct. App. 2024), *review denied* (Dec. 12, 2024). But the Court need not determine the grade of this violation because the government moved to dismiss it.

The government ultimately moved to dismiss Violation #1. And Defendant ultimately stipulated to the other violations.

Violation #2 concerns the condition that requires Defendant to live in a place approved by Probation and to notify Probation of any change in residency ten days before moving (or within 72 hours of the move if the move is unforeseen). According to the Report, a September 9 home visit to Defendant's registered residence revealed that he had not lived there since August 29. This is a Grade C violation.

Violation #3 alleges violations of the condition requiring compliance with drug-addiction treatment and with drug testing. According to the Report,

> On September 9, 2025, Windows of Discovery contacted Taylor and advised him to report to Windows of Discovery in Somerset, Kentucky, on September 10, 2025, at 3:30 p.m. for a drug test. Taylor did not show up for the drug test or contact the treatment provider advising he would not be there.
>
> On September 11, 2025, this officer called Taylor multiple times, but was unsuccessful. This officer left a voicemail advising Taylor to come to the United States Probation Office in London, Kentucky, at 10:00 a.m. on September 12, 2025, for a drug test. This officer also sent Taylor a text message with instructions to report to the probation office at 10:00 a.m. on September 12, 2025, for a drug test. Taylor failed to report to the probation office, but texted this officer at 10:41 a.m. on September 12, 2025, advising as soon as he was off work he would be at the office. This officer instructed Taylor to be at the probation office no later than 3:00 p.m. for a drug test on September 12, 2025. Taylor did not show up for the drug test and did not make contact with this officer indicating he would not be able to make it.

This is a Grade C violation.

On September 19, 2025, the USPO issued an Addendum to the Report, charging two additional violations. Violation #4 alleges a violation of the condition that prohibits unlawful use of a controlled substance. According to the Addendum, on September 19, 2025, Defendant submitted to a urine analysis test, via instant testing device, at the Pulaski County Detention

4

Center, which appeared positive for benzodiazepine, methamphetamine, and marijuana. He admitted use of these drugs and signed a Positive Drug Test Admission Report. This is a Grade C violation.

Based on Defendant's use of methamphetamine, marijuana, and benzodiazepine, Violation #5 charges a violation of the condition that prohibits commission of another federal, state, or local crime and the condition prohibiting unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #5 is a Grade B violation because Defendant's use and possession of these substances, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On October 8, 2025, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 354. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 21, 2025, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 355. The government moved to dismiss Violation #1. And Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations # 2, 3, 4, and 5. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations # 2, 3, 4, and 5 as described in the Report and Addendum. The United States thus established all four under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, including the Report, Addendum, and accompanying documents, plus the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute heroin, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation for Violation #5 and Grade C violation with respect to Violations #2, 3, and 4. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter Seven, is 18 to 24 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

---

[2] "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." USSG § 7B1.2(b).

6

§ 3583(b) & (h).  Defendant's conviction carries no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### IV.

At the final hearing, the government argued for a revocation penalty of 21 months' incarceration, with no additional supervision to follow.  The defense then endorsed that recommendation, essentially rendering it a jointly recommended penalty.

The government argued that a 21-month revocation sentence would be an appropriate escalation from the previous 18-month sentence of two years ago.  The breach of the Court's trust is aggravated here because it is a second revocation.  And there are four admitted violations.  The government gave Defendant credit for accepting responsibility, which warrants a penalty below the 24-month statutory maximum.  Yet, that the Probation Office had difficulty finding Defendant had "some aggravating power."

Concerning the underlying conviction, counsel for the government said the facts are the same as before.  Defendant was a significant heroin dealer.  And Defendant's return to drug use has a "tether" to his prior trafficking.

The government characterized Defendant as having "received a lot of breaks," despite his serious criminal history.  Defendant's underlying sentence was twenty months below the low end of his Guidelines Range.  After release from his prison term, Defendant was caught using drugs, with no action taken, prior to the 2023 revocation proceedings. D.E. 315.  Then he was revoked for drug use.  D.E. 326, 329.  About two months after his re-release, Defendant used methamphetamine last March, without revocation proceedings commencing.  D.E. 335.  Yet again, despite this leniency, six months later he engaged in a series of violations that included additional drug use.  The government considered it "very unusual" for one defendant to have two

no-action requests for admitted drug use. Yet Defendant had made "insufficient effort" to be compliant. Defendant also, in the course of the violations, disobeyed his treatment provider and probation officer. In the government's view, this pattern makes him a poor candidate for additional supervision.

The defense "joined" the government's arguments and requested the same sentence. The defense especially stressed the family support that Defendant would have upon his release. His girlfriend was in attendance at the hearing, as was Ms. Hood, the maternal grandmother of Defendant's twin sons, who also has custody.

"We are here," the defense explained, "because of [Defendant's] addiction." The defense recounted Defendant's history of drug-treatment opportunities and admitted he had not taken full advantage of them. The defense stressed that Defendant's pre-federal criminal history is all drug-possession offenses—no violence or trafficking. Even his trafficking in the federal case was driven by his addiction. Although Defendant is "a lovely man" and an "excellent father," further supervision would be "counterproductive" in light of his addiction struggles.

The defense also requested placement in a BOP facility with a MAT (Medication Assisted Treatment for Opioid Use Disorder) program—specifically Naltrexone ("Vivitrol") treatment. Defense counsel had seen other clients find success with this treatment.

Defendant briefly addressed the Court. He apologized to the Court, the probation officer, and his family. He promised his family members he would give his "best effort" this time.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke

Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of Grade B violations also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was part of a major pipeline of heroin from Cincinnati to Pulaski County. His Guidelines called for 120 to 150 months, but he received 100 months. At the time of his arrest in 2015, he was a daily intravenous user of heroin and meth. Since his original federal sentence, Probation has caught him using illegal drugs on four occasions. He thereby poses a danger to himself and also his family and the public.

The Court next considers Defendant's history and characteristics. He has a long history of drug-related crimes broken only by periods of custody. He has had multiple addiction-treatment opportunities, yet continues to succumb. However, his devotion to his family, and their care for him, is obvious.

Another factor considers the need for additional training and treatment. Defendant has received treatment, including the outpatient treatment he was receiving during his most recent supervision period. Both sides recognize that those opportunities have not yet enabled Defendant to avoid drug use, which is one reason for discontinuing supervision. Additionally, Defendant may be able to access additional treatment in prison.

Two other factors, the need to protect the public and the need to deter criminal conduct, weigh heavily in this case. Defendant's use of an illegal drug necessarily involves contact with drug trafficking. And Defendant trafficked drugs before to support his habit. The 21-month incarceration period will protect the public and warn Defendant to be more careful in the future.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach is serious here in that this is Defendant's second revocation and his fourth time to use illegal drugs while on supervision. It is also a serious breach for Defendant to be difficult to locate and to disobey the treatment provider and probation officer.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The Court adopts the parties' joint recommendation of revocation with 21 months of imprisonment, with no supervision to follow. The revocation penalty is more severe than the one imposed two years ago. And Defendant has proven himself difficult to supervise and not yet successful in addiction treatment.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

(1) That, upon the government's motion, Violation #1 be dismissed.

(2) That, upon his stipulation, Defendant be found guilty of Violations #2, 3, 4, and 5.

(3) Revocation with 21 months of imprisonment with no additional supervised release to follow.

(4) That Defendant be placed in a facility that provides medication-assisted treatment (to be provided at the BOP's discretion).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If

Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 22nd day of October, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge